## GILMAN v. GILMAN.

<table>
<tr><td>6 TU 211</td></tr>
<tr><td>67 AD 120</td></tr>
</table>

*Will — construction of — advances. Executors — may resort to estate for expense of legal counsel.*

A will which gave a legacy to W., a son of testator, directed that W. should have no portion of the estate until he had fairly accounted for and settled the amount charged against him in testator's book for money advanced by testator to him. The testator's books had charges against W. to the amount of $13,000. W. had a counter-claim against testator to the amount of $6,000 more than that amount. *Held,* that the right of W. to the legacy was not dependent upon the payment by him of the amount appearing on the testator's books, but only on a fair accounting, and W. was entitled to the payment of the $6,000 due him in addition to the amount of his legacy.

*Held,* also, that a majority of the executors had the right, with the consent of the surrogate, to adjust the account with W.

Executors *held* to be entitled to be indemnified from the estate of their testator for reasonable charges for legal counsel incurred by them in its management.

APPEAL by Anna K. Gilman, executrix, etc., under the last will of Nathaniel Gilman, deceased, from order of the surrogate's court of the county of New York directing payment of the sum of $4,000 as compensation to Charles H. Glover as legal counsel to the executors under said will; $6,000 on account of balance agreed to be due Winthrop W. Gilman, and the further sum of $20,000 on account of his distributive share in the estate of the testator.

The respondents in said appeal were said Glover and Winthrop W. Gilman, and George F. Gilman, Charles B. Gilman, and

Isaac Reddington, executors under said will. Sufficient facts appear in the opinion.

*W. W. Gage* and *E. C. Benedict,* for appellant.

*Charles E. Whitehead* and *Charles H. Glover,* for respondents.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

DANIELS, J. The testator was a man of large wealth, and by his will, directed the final residue of his estate to be divided equally among his surviving children, and the heirs of his three deceased daughters.

The appellant, and the respondent Winthrop W. Gilman, are two of the testator's children. Since the testator's decease, a partial distribution of the residue of the estate has been made under the sanction of the surrogate, to several of the residuary legatees. Among them the appellant has been a participant to a greater extent than the amount directed to be paid by the executors to Winthrop W. Gilman on account of his residuary share. The amount of the residue appears to have been entirely ample for the payment of the sums directed to be paid out of it, without in any respect endangering the payment of any other lawful claims which may be made against it. For that reason, and the further one that the amount directed to be paid will give Winthrop W. Gilman no more than most of the other residuary legatees have received; the order in that respect was entirely equitable; and as such, it was assented to by nearly all the other persons interested in the estate, and is now objected to only by the appellant. The objection made by her to the order directing the payment, chiefly depends upon a clause contained in the testator's will, declaring that Winthrop W. Gilman should have no portion of his share of the estate until he fairly accounted for and settled the amount charged on the testator's books against him for money advanced, and interest upon it.

This was met by the fact that it appeared that a majority of the executors had settled the account with him, and had allowed the balance of $6,000 mentioned in the order in his favor.

The account upon the testator's books extended from 1835 to 1845, and showed a balance against Winthrop W. Gilman, of a little over $13,000; and it seems to have been the testator's convic-

tion that the amount apparently due by the account as he stated it, was the sum owing from his son to his estate. But the latter did not acquiesce in the accuracy of this statement. He claimed that the testator was in fact indebted to him, and for the purpose of substantiating such claim, produced a large account against the estate, consisting, to a very great extent, of items and demands arising between 1827 and 1835. A majority of the executors made a settlement with him resulting in a balance in his favor of $6,000 mentioned in the order. And nothing was shown which would justify the conclusion that they acted in bad faith in making such settlement.

The testator did not render the legatee's right to his residuary legacy dependent upon the payment of the amount appearing to be charged against him on the books. It depended simply on his fairly accounting and settling the account. And that could be done by offsetting counter demands or charges, as well as by actual payments of the amount in money. The executors acted in that view, and, from the unimpeached adjustment which was made by them, it must be presumed that they became satisfied that the legatee had valid demands against the estate so far exceeding the charges made in the testator's books as to justify the balance allowed and admitted by them. If that were the case, then the legatee did fairly account for and settle those charges, and the settlement made with him became binding on the estate, although made only by a majority of the executors.

This was regarded as settled law in the case of *Murray* v. *Blatchford*, 1 Wend. 583, 616, which extended the same principle to the case of administrators. A similar principle has since been embodied in one of the statutes of the State, providing for compounding and compromising debts by executors and administrators, with the assent and approval of the surrogate. 4 N. Y. Stats. at Large, 506 (Laws 1847, ch. 80, § 1). And from the order made it is apparent that the settlement in this instance did receive the assent and approval of the surrogate.

If the settlement was collusive or fraudulent, that may be shown for the purpose of annulling or correcting it on the final adjustment of the executor's account. That right is secured and preserved, both by the common law and the statute just referred to. *Vide* § 2. In the present instance, the want of good faith on the part of the executors was in no way made to appear, and even

Gilman v. Gilman.

though they may have erred in allowing Winthrop W. Gilman more upon his demands than he ought strictly to have received, the settlement they made cannot be disregarded for that reason alone. *Chouteau* v. *Suydam*, 21 N. Y. 179, 184.

By the settlement which was made, the disability imposed upon him by the testator was removed, and from that time he was as equitably entitled to be paid a portion of his residuary legacy as those who had been previously treated with a similar degree of generosity by the surrogate and the executors. The residuary interest of the legatee in the estate seemed to be ample for the purpose of making the payment. And no reason exists for supposing that any injury or embarrassment whatever can be produced to the appellant by means of making it. Under the circumstances the order was well warranted by the ability of the estate to pay, and the equitable considerations indicating the propriety of placing him substantially in the same condition as those interested in the same fund, to whom even a greater sum had been paid out of their shares.

It was objected that it should not have been done until the accounts of the executors were finally and fully settled. But as long as that had been regarded as insufficient to prevent other legatees from receiving similar portions of their residuary legacies, it would be unjust to allow it so much weight as to render it the basis of defeating the respondent's claim. From the long period that this estate has been before the courts, a sound discretion would seem to require that no further sums should be paid to any of the residuary legatees, than those already provided for, until a final distribution can be made. Both the interests of the parties, and the duty of the courts, appear to require such a determination.

As the settlement between the executors making it and Winthrop W. Gilman was valid and binding, he became a creditor of the estate for the balance found to be due to him. And as the executors had the means to pay it in their hands without the least danger of injury or embarrassment to the estate from doing so, the order correctly provided for its payment. The direction was within the sound discretion of the surrogate, and the circumstances appearing justified him in making it.

The other amount allowed was for the compensation of the executors' counsel for services performed by him in that capacity. Whatever was reasonably incurred by them for services and advice

in the necessary management of the estate became a personal charge against them, for which, with the approval of the surrogate, they had the right to resort to the estate for indemnity. Dayton on Surrogates (3d ed.), 540, 542, and cases referred to. The amount was allowed within this principle, and it seems to have been warranted by it.

The evidence on which it was adjusted by the executors does not appear before the court. But as the affairs of the estate generated a large amount of litigation, and the claim was conceded by the executors to be a just one, and it is disputed by no person interested in the estate, except the appellant, it cannot be properly held that the surrogate was wrong in directing that it should be paid. The facts before him were sufficient to justify the belief that the demand was a proper one, and that warranted the portion of the order providing for its payment. The order appears to have been both equitable and reasonable in all respects, and within the authority which the law has conferred upon the surrogate.

It should, therefore, be affirmed, with $10 costs and disbursements to the respondents.

*Order affirmed.*